[No. C000879. Third Dist. July 20, 1989.]

ROLLAND L. BRUNTZ, Plaintiff and Appellant, v.
ANDRE ALFARO et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 966(b) and 976.1, this opinion is certified for
publication with the exception of parts I and III.

COUNSEL

Gladstein & Gladstein, Jed Gladstein, Goorjian & McCabe and J. Frank McCabe for Plaintiff and Appellant.

Charles Stuhr and Michele M. Stella for Defendants and Respondents.

OPINION

**SPARKS, Acting P. J.**—Civil Code section 2924c, subdivision (d) limits the amount of attorney's fees which may be charged by the beneficiary or mortgagee for the reinstatement of an obligation secured by a deed of trust or mortgage after there has been a default in the payment of interest, principal or other designated obligations. The question on appeal is whether this statutory limitation applies to both judicial and nonjudicial foreclosures or only to a nonjudicial foreclosure. We hold that it applies to both.

Plaintiff Rolland L. Bruntz appeals from a judgment in favor of defendants entered after the court granted their motion for summary judgment.[1] Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment and instead should have granted his motion. We address the issue of attorney's fees in the published portion of this opinion.

---

[1] The responding defendants are Andre Alfaro, individually and doing business as The Realty Company, his wife Carol Alfaro, and two limited partnerships, Baeta Investors Limited and Eaglet Investors Limited, of which Andre Alfaro is the general partner. For convenience, we shall collectively refer to these parties as the defendants. All other defendants named in the various pleadings were dismissed at the trial court level and are not parties to this appeal.

In the unpublished part, we consider and reject plaintiff's contentions that there are triable issues of fact on the remaining questions. Finding no triable issues of fact or error of law, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arose out of the complicated financial dealings of a number of persons and the record on appeal is voluminous. However, the dispute involved in this appeal and the factual circumstances which gave rise to it are relatively straightforward. This action concerns two parcels of property in Sacramento referred to as the Dixianne and the Traction properties. The properties are burdened by an all-inclusive (wrap-around) deed of trust which secures an all-inclusive promissory note in the principal sum of $531,500. The promissory note and deed of trust are referred to by the parties as the Zimmerman-Green note and deed of trust. By 1984 plaintiff was the assignee of the Zimmerman-Green note and sole beneficiary under the deed of trust securing it. Defendants owned the Dixianne and Traction properties, subject to the Zimmerman-Green and other deeds of trust.

The Zimmerman-Green promissory note and deed of trust were executed in 1981 by the then owners of the properties. At that time there were nine prior deeds of trust recorded against the properties, including a deed of trust in favor of Don A. and Lois C. Mowat. The Zimmerman-Green note and deed of trust were intended to secure payment of an indebtedness to the payee thereunder and to secure the payment of the prior obligations. To this end the Zimmerman-Green note provided for monthly payments of $3,986.25 to be made to an agent for collection who would in turn use the proceeds to make payments under the prior obligations. Until the Mowat obligation was satisfied, the payments under the Zimmerman-Green note were insufficient to meet all of the prior secured obligations. Consequently, the payee under the note was required to make additional contributions to meet those obligations. It was contemplated that upon satisfaction of the Mowat obligation the payment under the Zimmerman-Green note would be sufficient to satisfy the other obligations and provide a return to the payee. Thereafter, all payments under the Zimmerman-Green note in excess of those necessary to meet prior obligations would inure to the benefit of the payee.

The Mowat obligation was in the principal sum of $120,000. It called for monthly payments of $1,700, representing interest only, from April 23, 1981, until April 23, 1984, at which time the entire principal balance would be due and payable. With respect to the Mowat obligation the Zimmerman-Green note provided: "On 4/23/84 Makers shall pay to holder a principal sum in the amount of One Hundred Twenty Thousand Dollars

($120,000.00) and concurrent therewith the note in favor of [the Mowats] . . . shall be endorsed as 'paid in full', delivered to the makers of said note, and the [Mowat deed of trust] shall be reconveyed in full. Makers shall pay any late payment penalty and increase in interest caused by such late payment."

On April 23, 1984, when the Mowat principal became due, the defendants were unable to make the payment. Defendant Andre Alfaro contacted Don Mowat and advised him that defendants could not make the principal payment and that he was working to raise the money. Mowat said he would not foreclose immediately if defendants would continue to make $1,700 per month interest payments until the principal could be paid. From April 23, 1984, until October 23, 1984, in addition to their payments under the Zimmerman-Green note, defendants made monthly interest payments of $1,700 directly to Mowat. Andre Alfaro advised plaintiff of these circumstances both orally and in writing. Alfaro and plaintiff spoke about once a month until September 1984, and did not thereafter speak with each other until after this action was filed.

In October 1984, defendants advised Mowat that they had successfully raised the funds to make the principal payment under the Mowat note. Mowat referred defendants to A.I.C. Trust Deed Services who advised them that foreclosure proceedings had not been commenced and payment of $120,000 plus $95 for attorney fees and $50 trustee fees would be accepted. Defendants agreed to make these payments whereupon Mowat demanded an additional sum of $1,190 for alleged late fees. Although these alleged late fees had not been incurred during the period defendants were directly making the interest payments, they agreed to include this sum in their payment. Although defendants made payment of these sums, Mowat then refused to request reconveyance by the trustee based upon his claim that an additional interest payment of $1,700 was due. Defendants did not believe that they were responsible for another interest payment and they initially refused to make this payment. Eventually, after this action was filed, defendants made the payment of the interest demanded by Mowat and they obtained a reconveyance of the Mowat deed of trust.[2]

Until December 1984, defendants continued to make their payments under the Zimmerman-Green note to the Bank of America, as collection

---

[2]The Mowat note provided for interest to accrue from the 23d to the 23d of each month, and to be paid on the 5th of the following month. Until April 23, 1984, the agent for collection made the interest payments from defendants' payments on the Zimmerman-Green note and additional sums paid by plaintiff. When the Mowat principal came due on April 23, 1984, and defendants were unable to pay it, they began paying interest that accrued after that date directly to Mowat. The interest that was due for the month ending on April 23, 1984, was apparently not paid. Defendants believed this payment should have been made out of their payment on the Zimmerman-Green note and should not have been attributed to them.

agent. In mid-December 1984, the bank notified defendants that the collection account was being closed and that the sums in the account, in the amount of $3,337.50, were being returned. Defendants placed the funds in a noninterest-bearing trust account and awaited further instructions from plaintiff. In the meantime they became aware that the payments to the holders of senior deeds of trust, which previously had been made by the collection agent out of the Zimmerman-Green note payment, were not being made. Defendants undertook to make those payments, in the amount of $3,312 per month, directly to the senior lienholders.

Plaintiff filed his complaint on February 11, 1985, and defendants were served on February 27, 1985. Upon receiving the complaint, defendant Andre Alfaro wrote to plaintiff to explain that the $120,000 principal payment due under the Mowat note had been paid in November 1984 and that defendants had been paying the sums due under the senior secured obligations. He enclosed the funds which were returned to defendants by the Bank of America when it closed the collection account, and he enclosed an additional sum of $2,022.75, which represented the difference between the payments called for in the Zimmerman-Green note and the sums defendants had been paying directly to the senior lienholders. Plaintiff refused the tender and insisted that in order to resolve the matter defendants would be required to pay an additional sum in excess of $20,000 for attorney's fees and costs. From there plaintiff's demands continued to escalate until, in response to a beneficiary's demand in November 1985, he asserted that it would require approximately $100,000 for attorney's fees and costs in order to reinstate the Zimmerman-Green obligation.

Plaintiff's original complaint in this matter was a broad pleading. In addition to the Alfaro defendants, 20 other persons were named as defendants. It set forth 11 causes of action and its title stated it was a complaint for foreclosure of a deed of trust, specific performance of a rents and profits clause and appointment of a receiver, declaratory relief, rescission, restitution, negligence, fraud and conspiracy. It was soon superseded by a first amended complaint. This complaint named 20 defendants in addition to the Alfaro defendants, and attempted to set forth 29 causes of action.

Eventually, all defendants other than the Alfaro defendants and all causes of action other than judicial foreclosure of the deed of trust and conversion were dismissed. The allegations against the Alfaro defendants for foreclosure and conversion are set forth in the second amended complaint. With respect to foreclosure, the complaint alleges: "By the terms of the Zimmerman-Green Promissory Note, the makers promised to pay the sum of $120,000.00 to the holder of the note on April 23, 1984, but neither the makers nor any other person or entity has to date made such payment.

On information and belief, Plaintiff alleges that such default was committed willfully and in bad faith. For such default, among others, Plaintiff has exercised his option and elected to declare the whole sum of principal and interest immediately due and payable."[3] The conversion cause of action accuses defendants of converting to their own use the funds sent to them by the Bank of America when it closed the collection account.

Plaintiff moved for summary judgment on the cause of action for foreclosure of the deed of trust. Defendants moved for summary judgment on all causes of action. The trial court granted defendants' motion for summary judgment and entered judgment against plaintiff. Plaintiff appeals.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . .

### II

In the trial court, defendants argued that even if they had been in default on the Zimmerman-Green note they were entitled to dismissal of the foreclosure action because they had cured their default. Plaintiff asserts that they did not cure their default because they refused to pay his demand for attorney's fees and costs.

The factual scenario giving rise to this issue took place after plaintiff filed his foreclosure action. When he was served with the complaint, Andre Alfaro wrote to plaintiff to explain that he had made the $120,000 principal payment to the Mowats and that since the collection agent closed the account he had continued to make payments to the holders of the underlying notes directly. He enclosed the sum the collection agent had returned to him when it closed the account. He also enclosed payment for the difference between the payment called for in the Zimmerman-Green note and the payments he had been making to the holders of the underlying notes. Plaintiff refused the tender and insisted that in order to cure the default defendants would be required to pay more than $20,000 in attorney's fees and costs to him.

---

[3] In fact, plaintiff did not exercise an election to declare the balance of the note due and payable in writing as required by the terms of the note. Instead, he asserts that filing his complaint for foreclosure constitutes an election to accelerate the debt.

* See footnote, *ante,* page 411.

Following plaintiff's refusal of the initial tender, defendants paid the disputed interest payment to the Mowats and obtained reconveyance of the Mowat deed of trust. Although defendants denied that they were in default, they made certain tenders to plaintiff to resolve the dispute. On June 7, 1985, defendants made a tender which included $540.76 for attorney's fees pursuant to Civil Code section 2924c. This fee was calculated on the basis of plaintiff's equity in the Zimmerman-Green note. Plaintiff refused it on the ground the attorney's fees were inadequate. On July 1, 1985, defendants made another tender which included $1,160.27 for attorney's fees pursuant to Civil Code section 2924c. This fee was calculated on the basis of the unpaid principal on the Zimmerman-Green note without reduction for the portion due to the holders of the underlying senior obligations. Plaintiff rejected the tender on the ground that the limitations in Civil Code section 2924c do not apply to foreclosure actions. Finally, in November 1985 defendants made another tender. This tender included attorney's fees calculated under Civil Code section 2924c based upon the full face value of the Zimmerman-Green note and deed of trust. Plaintiff rejected this tender, again on the basis of his claim that Civil Code section 2924c does not apply. Throughout this period, plaintiff's demand for attorney's fees continued to escalate. It went from more than $20,000 shortly after the complaint was filed to $25,000, then to over $38,000, and finally, in November 1985, plaintiff asserted that such fees were in excess of $72,000 and would approximate $100,000 at the conclusion of the litigation.

It is apparent that the only issue in dispute from a time shortly after the filing of the complaint has been plaintiff's demand for attorney's fees. Although plaintiff maintains that defendants defaulted by paying the $120,000 directly to the Mowats rather than to him, he concedes that they are entitled to a setoff of that sum. He also concedes that defendants were willing to pay the modest sums he claimed for principal and accrued interest. The attorney's fee dispute hinges on Civil Code section 2924c. Defendants maintain that even if they were in default they were entitled to reinstatement by payment of all amounts due with fees and costs as limited by that section. Plaintiff maintains that section has no application to judicial foreclosure actions and to obtain reinstatement defendants were required to pay attorney's fees in the amount he demanded.

At all relevant times Civil Code section 2924c, subdivision (d) has provided: "Trustee's or attorney's fees which may be charged pursuant to subdivision (a), or until the notice of sale is deposited in the mail to the trustor as provided in Section 2924b, if the sale is by power of sale contained in the deed of trust or mortgage, or, otherwise at any time prior to the decree of foreclosure, are hereby authorized to be in an amount which does not exceed one hundred fifty dollars ($150) with respect to any portion of the

unpaid principal sum secured which is fifty thousand dollars ($50,000) or less, plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000) up to and including one hundred fifty thousand dollars ($150,000), plus one-quarter of 1 percent of any portion of the unpaid principal sum secured exceeding one hundred fifty thousand dollars ($150,000), plus one-eighth of 1 percent of any portion of the unpaid principal sum secured exceeding five hundred thousand dollars ($500,000). Any charge for trustee's or attorney's fees authorized by this subdivision shall be conclusively presumed to be lawful and valid where such charge does not exceed the amounts authorized herein."[4]

Plaintiff asserts that a "close reading of this statute leads to the inescapable conclusion that it refers to attorney's fees incident to notice of default in a non-judicial foreclosure." We disagree. If the Legislature intended that Civil Code section 2924c, subdivision (d) would apply only in private execution sales and not in judicial foreclosure actions, then it could not have chosen more singularly inappropriate language. Civil Code section 2924c, subdivision (d) provides limitations upon attorney's fees which may be charged for reinstatement until the notice of sale is mailed in a nonjudicial foreclosure, "or, otherwise at any time prior to the *decree of foreclosure*." (Civ. Code, § 2924c, subd. (d), italics added.) Decrees of foreclosure are, of course, issued only in judicial foreclosure proceedings and thus Civil Code section 2924c, subdivision (d) obviously has application in such proceedings.

Reference to other subdivisions of Civil Code section 2924c reinforces the conclusion that the section does in fact apply in cases of judicial foreclosure. Subdivision (c), which provides for the costs and expenses which may be charged for reinstatement, includes "a fee for a trustee's sale guarantee or, in the event of judicial foreclosure, a litigation guarantee." Subdivision (a)(1) of Civil Code section 2924c provides for reinstatement after default. In order to obtain reinstatement, a debtor must pay the entire amount then due under the deed of trust or mortgage (other than any accelerated portion), including reasonable costs and expenses subject to Civil Code section 2924c, subdivision (c), and trustee's or attorney's fees subject to Civil Code section 2924c, subdivision (d). If such payments are made, then "all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if no such acceleration

---

[4] Section 2924c was amended several times while this dispute was pending, but the amendments did not affect subdivision (d). (See Stats. 1983, ch. 1217, § 1, p. 4664; Stats. 1984, ch. 919, § 1, pp. 3082-3083; Stats. 1984, ch. 1730, §§ 1, 1.5, pp. 6288, 6291.) Subdivision (d) now provides for fees of $200 for the first $50,000 of secured debt, and otherwise is as quoted above. (Stats. 1986, ch. 1385, § 3, p. 4939.)

occurred." Nonjudicial foreclosures are governed by Civil Code section 2924c, subdivision (a)(2) which provides for rescission of the notice of default and demand for sale when the default is cured. In view of these statutory terms, it cannot be doubted that Civil Code section 2924c, including the limitations in subdivision (d), applies in cases of judicial foreclosure.

■ Plaintiff contends that other provisions of law govern judicial foreclosure proceedings. Specifically, he refers to Code of Civil Procedure sections 580c and 730, which provide that where a deed of trust or mortgage is judicially foreclosed the court shall fix the attorney's fees which may be charged to the debtor. What plaintiff fails to take into account is the stage of the proceeding at which defendants attempted to resolve the matter by tendering sums for attorney's fees. Code of Civil Procedure sections 580c and 730 apply only when the debtor fails to cure the default and the action proceeds to a decree of foreclosure. This is explicit in Civil Code section 2924d, subdivision (e), which provides: "When a court issues a decree of foreclosure, it shall have discretion to award attorney's fees, costs, and expenses as are reasonable, if provided for in the note, deed of trust, or mortgage, pursuant to Section 580c of the Code of Civil Procedure." But where, as here, the debtor desires to cure the default and avoid foreclosure then the trustee's or attorney's fees which must be paid are limited by Civil Code section 2924c, subdivision (d), which expressly applies at any time prior to the decree of foreclosure.

Plaintiff asserts that decisional authorities have construed Civil Code section 2924c, subdivision (d) in a manner consistent with his contention. In this respect, we first note that Civil Code section 2924c clearly and unambiguously applies in judicial foreclosure actions until a decree of foreclosure is issued. ■ Where statutory language is clear and unambiguous, there is no need for judicial construction and, in the absence of constitutional infirmity, courts must apply the statutory language as written. (*People* v. *Webb* (1986) 186 Cal.App.3d 401, 409 [230 Cal.Rptr. 755]. See also *In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744]; *In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) Neither plaintiff nor any authority to which he cites suggests that constitutional provisions are implicated. ■ Accordingly, if plaintiff's authorities in fact hold that Civil Code section 2924c does not apply whenever judicial foreclosure is involved, we would be compelled to disagree with them. But in fact these authorities do not support plaintiff's claim.

*Santa Clara Savings & Loan Assn.* v. *Pereira* (1985) 164 Cal.App.3d 1089 [211 Cal.Rptr. 54], was a declaratory relief action rather than a foreclosure action and no issue was presented with respect to the applicability of Civil

Code section 2924c. In *Wutzke* v. *Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36 [198 Cal.Rptr. 418], the trial court issued a decree of foreclosure and, thus, pursuant to Civil Code section 2924d, subdivision (e), no issue with respect to Civil Code section 2924c, subdivision (d) was presented. In *Sweatt* v. *Foreclosure Co.* (1985) 166 Cal.App.3d 273 [212 Cal.Rptr. 350], the court considered Civil Code section 2924c, subdivision (d) at a time when it provided for maximum trustee's or attorney's fees of $150 or one-half of 1 percent of the entire secured principal sum, whichever was greater, and did not create a conclusive presumption that claims within those limits were lawful and valid. After a dispute was resolved, the trial court awarded $150 for trustee's fees rather than one-half of 1 percent ($262.78), and the Court of Appeal found no abuse of discretion. Obviously, the court did not imply that the maximum limits of Civil Code section 2924c, subdivision (d) may be disregarded. Thus, these decisions do not avail plaintiff.

Plaintiff also relies upon the decision in *Buck* v. *Barb* (1983) 147 Cal.App.3d 920 [195 Cal.Rptr. 461]. There the beneficiary under a deed of trust was compelled to incur $250 in attorney's fees in order to protect her security and she sought, pursuant to express provision in her deed of trust, to add that sum to the secured debt. The court held that she could do so, noting that under the circumstances the sum claimed was in the nature of a collateral advance which the deed of trust permitted to be added to the secured debt. (147 Cal.App.3d at p. 925.) In *Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, at page 1512 [236 Cal.Rptr. 59], in footnote 10, we had occasion to explain the *Buck* v. *Barb* holding. We noted that Civil Code section 2924c, subdivisions (c) and (d) provide the maximum sums which may be claimed as expenses of foreclosing on the property. But aside from the expenses of foreclosure, there are other costs, including legal fees, which may be incurred by a creditor in protecting the security. Under appropriate contract provisions, such expenses may be treated as collateral advances and added to the amount of the debt. Whether a particular expense may be treated as an advance, or is subject to the limitations in Civil Code section 2924c, will depend upon the purpose for which the expense was incurred and the particular contractual terms involved.

Neither *Buck* v. *Barb* nor *Passanisi* stands for the proposition that the limitations in Civil Code section 2924c may be disregarded in either a judicial or nonjudicial foreclosure action. Those decisions simply recognize that Civil Code section 2924c limits the costs and trustee's or attorney's fees which may be claimed as the expenses of foreclosure. Other expenses, including legal fees, may be incurred for other purposes and, depending upon contractual provisions, may be treated as part of the secured debt.

Plaintiff's claim in this case finds no support in *Buck* v. *Barb* or *Passanisi*. His claimed attorney's fees were incurred "to commence and prosecute this foreclosure action." He has continuously insisted that Civil Code section 2924c does not apply in judicial foreclosure actions and that he is entitled to the fees he demands as expenses of foreclosure. He has at no time identified any fees which were incurred in a manner which could be considered collateral to the foreclosure within the meaning of *Buck* v. *Barb* and *Passanisi*. Accordingly, since defendants sought to cure any default and reinstate their loan prior to the issuance of a decree of foreclosure, the trustee's or attorney's fees they could be required to pay are limited under Civil Code section 2924c, subdivision (d).

■ Plaintiff finally asserts that defendants' claim of an attorney's fee limitation under Civil Code section 2924c, subdivision (d), is rebutted by their own request for attorney's fees under Civil Code section 1717 after summary judgment was granted.[5] After prevailing on their summary judgment motion, defendants sought attorney's fees and costs in the total amount of $34,450.98. The trial court granted the request pursuant to the terms of the Zimmerman-Green note and deed of trust and Civil Code section 1717. Plaintiff insists that the only reason this litigation was not resolved much earlier was the defendants' insistence that the attorney's fees they were entitled to recover were limited by Civil Code section 2924c, subdivision (d), and he finds it absurd that, after prevailing, defendants should request fees unlimited by that provision.

We find no fatal incongruity. The limitations in Civil Code section 2924c, subdivision (d) apply only where a debtor wishes to cure a default before a decree of foreclosure is rendered. In such circumstances, the debtor must pay all sums due under the note and deed of trust and costs and fees as limited by Civil Code section 2924c. Where the debtor fails or refuses to cure the default and reinstate the loan and the matter proceeds to a decree of foreclosure then those limitations do not apply. (Civ. Code, § 2924d, subd. (e).) Here, defendants attempted to cure the alleged default by tendering the sums demanded under the note and deed of trust and attorney's fees as limited by Civil Code section 2924c. Plaintiff refused the tender and compelled defendants to continue the litigation to obtain a judgment

---

[5] Civil Code section 1717 makes contractual attorney's fee provisions reciprocal. The relevant portion of section 1717 provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

adverse to him. Since the matter went to final judgment, the reciprocity required by Civil Code section 1717 dictates that the fees recoverable by the prevailing party, here defendants, are not limited by Civil Code section 2924c.

The effect of plaintiff's refusal to accept defendants' tenders of payment remains to be determined. On three occasions defendants tendered the amounts demanded by plaintiff under the Zimmerman-Green note together with fees limited by Civil Code section 2924c. Plaintiff refused each tender on the basis of his claim that the attorney's fees he was entitled to demand were not limited by Civil Code section 2924c. Plaintiff was wrong; defendants were entitled to cure any default by payment of the sums due under the note with attorney's fees and costs as limited by Civil Code section 2924c, and thus the onus of the refused tender falls upon plaintiff. Civil Code section 1504 provides: "An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof." Civil Code section 1512 provides: "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties."

When plaintiff brought the action for foreclosure, defendants were entitled, pursuant to Civil Code section 2924c, subdivision (a), to cure any alleged default and to reinstate the loan, and to obtain dismissal of the foreclosure action, by paying all amounts then due under the secured note with fees and costs as limited by subdivisions (c) and (d). Defendants' efforts to tender these sums were wrongfully refused by plaintiff. Nevertheless, defendants were entitled to the incidents and benefits of performance, including dismissal of the foreclosure action. Accordingly, even if defendants were initially in default under the Zimmerman-Green note and deed of trust, the default was cured and defendants were entitled to dismissal of the foreclosure cause of action.

III*

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

---

* See footnote, *ante,* page 411.

The judgment is affirmed.

Sims, J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 11, 1989.