[No. B045859. Second Dist., Div. Five. Apr. 23, 1991.]

VINCE CARUSO et al., Plaintiffs and Appellants, v.
GREAT WESTERN SAVINGS, Defendant and Respondent.

## COUNSEL

Busetti & Feinstein and John F. Busetti for Plaintiffs and Appellants.

Frandzel & Share, Steven N. Bloom and Craig A. Welin for Defendant and Respondent.

## OPINION

**BOREN, J.**—Appellants, Vince Caruso and Sande St. John, appeal following their unsuccessful complaint in intervention by which they sought to block a foreclosure sale by respondent, Great Western Savings. Appellants claim that respondent should have applied insurance proceeds received after property damage from land movement to reduce the amount owed on a promissory note and thus to extinguish its trust deed. The trial court determined that appellants had no claim or interest in the insurance proceeds and were not entitled to an injunction or an accounting and that respondent was entitled to its costs, including attorney's fees, incurred in protecting its deed of trust. We affirm, but remand the matter on the issue of attorney's fees.

### FACTS

In July of 1981, Vince Caruso owned a residence located on Castlemare Road in Pacific Palisades. Thereafter, the property became part of the bankruptcy estate of Caruso's ex-wife, Monique. In May of 1982, the trustee in bankruptcy, David Gill, sold the property to Martin Rosen and Helen Ware, who executed a $104,000 note and deed of trust (hereinafter, the Gill note and deed of trust). Rosen and Ware obtained property insurance from the Insurance Company of North America (INA). In December of 1982, massive soil and land movement caused substantial damage to the property, which became uninhabitable.

On February 28, 1983, the trustee in bankruptcy executed and delivered a subordination agreement to Great Western which provided that the lien of the Gill deed of trust would be subordinated to the lien of a Great Western deed of trust which was recorded soon thereafter. On March 9, 1983, Rosen and Ware executed a $200,000 note and, as security, a deed of trust to Great Western (hereinafter, the Great Western note and deed of trust).

In March of 1983, the property on Castlemare Road was appraised at approximately $390,000. Estimates on the cost to stabilize the site and to repair the residence ranged from $317,000 to $500,000.

In July of 1984, INA paid $297,000 on a property damage claim by Rosen and Ware. Of that total, INA paid $97,000 to Rosen and Ware and issued a check for $200,000 payable to Rosen, Ware and Great Western. Disputes ensued as to the disbursement of the $200,000 insurance claim check. Rosen and Ware wanted the insurance proceeds to remedy the soil subsidence problem and repair the residence. Great Western did not want to release the insurance proceeds for property repair until it could be assured that the earth movement which caused the problem could be stopped and that the residence could be restored with the insurance proceeds. Rather, Great Western wanted the insurance proceeds applied to the $200,000 loan.

The dispute over the insurance proceeds was tentatively resolved in August of 1984. Rosen, Ware and Great Western reached an interim agreement whereby Great Western released $10,000 of the insurance proceeds to Rosen and Ware, but placed the remaining $190,000 in a joint account with Rosen and Ware to receive the interest from the account. Meanwhile, on January 18, 1985, Gill assigned all beneficial interest in the Gill note and deed of trust to Caruso.

With the dispute over the insurance proceeds not finally resolved after two years, in August of 1986 Great Western filed an action against Rosen and Ware for declaratory relief regarding distribution of the remaining $190,000. In September of 1987, Rosen and Ware stopped making payments on the note and defaulted on their loan obligation to Great Western. In November of 1987, Rosen and Ware informed Great Western that they had abandoned the Castlemare Road property and had ceased all efforts to correct the property's defects.

After Great Western had agreed to an extension of time based on the early intention of Rosen and Ware to correct the property's defects, on December 7, 1987, Rosen and Ware answered Great Western's complaint for declaratory relief. Also on December 7, 1987, Caruso assigned an undivided 16 percent interest in the Gill note and deed of trust to Sande St. John. On February 2, 1988, Caruso and St. John completed nonjudicial foreclosure proceedings under their Gill deed of trust. At the foreclosure sale, Caruso and St. John made a full credit bid of $131,580.24 (the amount owed under the Gill note and deed of trust) and became sole owners of the Castlemare Road property, subject only to the lien represented by the note secured by the deed of trust held by Great Western. After acquiring the property, Caruso and St. John refused to make any payments due under the Great Western note. As observed by Caruso and St. John, $190,000 of the insurance proceeds were still on hand until April of 1989, but Great Western had added interest and other charges on the $200,000 original note,

which could have been retired in 1984, and thus the total due was now $241,516.

As a result of the failure of Rosen and Ware to make payments on the note since at least September of 1987, Great Western gave notice that it intended to foreclose on the property. On July 1, 1988, Caruso and St. John attempted to prevent the nonjudicial foreclosure sale, scheduled for July 5, 1988, by intervening and seeking injunctive relief. As a basis for their complaint in intervention, Caruso and St. John alleged, in essence, that Great Western should have credited the loan obligation of Rosen and Ware with the $190,000 in insurance proceeds. Great Western countered that Rosen and Great Western were designated as joint beneficiaries of the insurance, preventing Great Western's unilateral application of the insurance proceeds, and that Rosen and Ware had asserted that the Castlemare Road property was not impaired, thus entitling them to all or some of the insurance proceeds.

On July 1, 1988, the court issued a temporary restraining order as to the foreclosure sale on the express condition that Caruso and St. John cure the monetary default under the Great Western deed of trust, which required payment of $23,349.08. Caruso made the necessary payment, and Great Western cancelled the sale date and the notice of default. On July 22, 1988, the request by Caruso and St. John for a preliminary injunction was denied, and the temporary restraining order was dissolved. After July 1, 1988, Caruso and St. John refused to make any payments on the Great Western note, which resulted in the property again going into foreclosure.

Prior to the first trial date, in November of 1988, Great Western, Rosen and Ware reached an agreement regarding the disbursement of the insurance proceeds. Pursuant to the settlement agreement, Rosen and Ware received $40,000 of the insurance proceeds.

At trial, Great Western, Caruso, and St. John submitted the matter on the basis of their joint stipulation of undisputed facts and their briefs. On April 27, 1989, the court issued a minute order reflecting its tentative decision. The court deemed that Caruso and St. John had no right, claim or interest in the homeowner's insurance policy on the Castlemare Road property, and that Great Western should apply the remaining insurance proceeds (approximately $150,000) to the outstanding principal balance due on the Great Western note. The court also tentatively ruled that Caruso and St. John were not entitled to injunctive relief or to an accounting. After oral argument on May 15, 1988, the trial court's tentative decision became its ruling.

In June of 1989, Great Western filed a proposed judgment and its memorandum of costs which included a request for attorney's fees. After Caruso and St. John filed their objections, which were denied, on August 31, 1989, the court entered an amended judgment finalizing its ruling and granting Great Western its costs, including attorney's fees. The costs and attorney's fees became a lien against the Castlemare Road property.

Caruso and St. John appeal.

## DISCUSSION

### I. *The Complaint in Intervention*

■ Caruso and St. John contend that the trial court erred in ruling that they had no interest in the insurance proceeds and thus no standing to challenge the application of the insurance proceeds. Caruso and St. John claim that since they hold title to the property subject to the Great Western deed of trust, having succeeded to the title of Rosen and Ware by foreclosing on the property, they have standing to question and dispute the amount claimed by Great Western as due on its note and deed of trust. As Caruso and St. John view the matter, it was apparent in late 1984 or early 1985 that the $200,000 in insurance proceeds should have been subtracted from the $200,000 principal amount on the Great Western note, and that Great Western improperly delayed in subtracting the value of the insurance proceeds form the balance of the note until the judgment, on August 31, 1989. Great Western's purported delay from 1984 to 1988 in prosecuting its claim against Rosen and Ware as to the insurance proceeds prevented Caruso and St. John from saving the money in arrears (over $23,000 in interest and related charges) on the $200,000 value of the note between July of 1988 and August of 1989. However, the trial court properly ruled that Caruso and St. John had no interest in the insurance proceeds because, after their nonjudicial foreclosure proceedings under the Gill deed of trust, they made a full credit bid for the property which resulted in the total satisfaction of the secured obligation.

In *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], the court addressed a somewhat analogous and controlling situation. *Cornelison* involved a statutory action for waste (Civ. Code, § 2929) against the successor in interest of the owner-trustor for his purported failure to properly care for or maintain the property which constituted the security under a deed of trust given to secure the balance of the purchase price at the sale of the property. The house on the property was declared uninhabitable, and the debt was in default. The trust deed holder, who was the original seller of the property, instituted statutory proceedings and

caused the property to be sold at a trustee's sale. At the sale, the trust deed holder purchased the property with a full credit bid, a bid reflecting the balance of the debt plus foreclosure costs. (15 Cal.3d at pp. 593-595.)

The Supreme Court in *Cornelison* held that the full credit bid extinguished the lien and precluded any recovery by the lienholder of damages for waste. The court discussed the right of the lienholder to recover for waste and the statutory inability, under the antideficiency legislation (Code Civ. Proc., §§ 580b, 580d), of the trust deed holder to recover damages for any but "bad faith" waste, except to the extent that the lienholder's security has been impaired. (15 Cal.3d at pp. 597-607.)

In reaching its conclusion in the context of an action for waste, the court in *Cornelison* addressed by analogy a situation similar to that here involving insurance proceeds. As the court explained in *Cornelison*: "Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished. (Civ. Code, § 2910; *Streiff* v. *Darlington* (1973) 9 Cal.2d 42, 45 [68 P.2d 728]; *Duarte* v. *Lake Gregory Land and Water Co.* [1974] 39 Cal.App.3d 101, 104-105 [113 Cal.Rptr. 893].) In such event, the creditor cannot subsequently recover insurance proceeds payable for damage to the property (*Reynolds* v. *London etc. Ins. Co.* (1900) 128 Cal. 16, 19-20 [60 P. 467]; *Duarte* v. *Lake Gregory Land and Water Co.*, *supra*, 39 Cal.App.3d at p. 105; *Rosenbaum* v. *Funcannon* (9th Cir. 1962) 308 F.2d 680, 684-685), . . . '[T]he purpose of the trustee's sale is to resolve the question of value and the question of potential forfeiture through competitive bidding . . . .' (Hetland, Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) p. 255.) In *Smith* v. *Allen* (1968) 68 Cal.2d 93, 95-96 [65 Cal.Rptr. 153, 436 P.2d 65], this court held that a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold." (*Cornelison* v. *Kornbluth*, *supra*, 15 Cal.3d at pp. 606-607.)

Nonetheless, there is a method by which the lien creditor can preserve its rights to obtain the benefits of the insurance proceeds. As the court further explained in *Cornelison*: "At the nonjudicial foreclosure sale, the beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be useless to require him to tender cash which would only be immediately returned to him. (*Central Sav. Bank of Oakland* v. *Lake* (1927) 201 Cal. 438, 447-448 [257 P. 521].) However, the mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. Indeed, 'many creditors continually enter low credit bids . . . to provide access to additional security or additional funds.' (Hetland, Secured Real Estate Transactions (Cont. Ed.

Bar 1974) p. 196.)" (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 607.) If, unlike in the present case, the creditors had entered a low bid for the property, " 'a deficiency balance of the debt would have remained for which [the creditors] would have had an entitlement out of the insurance policy. The extinguishment of the mortgage or deed of trust by the foreclosure would not have affected [the creditors'] right to be paid the remainder of the debt under the policy. [¶] However, this was not done. Presumably, [the creditors (here, Caruso and St. John)] bid what [they] thought the security property to be worth in its condition at the time of [their] bid.' " (*Cornelison* v. *Kornbluth, supra,* at p. 607, quoting from *Rosenbaum* v. *Funcannon, supra,* 308 F.2d 680, 685.)

■ As Great Western urges, consistent with the principles discussed in *Cornelison,* as a result of the full credit bid by Caruso and St. John at the foreclosure sale, the Gill note was satisfied, Rosen and Ware legally paid in full their obligation to Caruso and St. John, and Caruso and St. John had no further right to any collateral. Caruso and St. John, as creditors, cannot satisfy in full an obligation owed to them and then reap an additional benefit by obtaining the use of insurance proceeds. The insurance proceeds were disbursed to the parties who had an interest in the insurance policy, Great Western, Rosen and Ware. Caruso and St. John did not protect any right they may have had in the insurance proceeds or the right to complain about the application of the proceeds because they did not underbid their security interest at their foreclosure sale.

Caruso and St. John, however, urge that they do have standing to attack Great Western's delay in reducing the value of the Great Western note because they made a full credit bid only on the Gill note and not the Great Western note, upon which they became debtors when they foreclosed on the Gill note. However, the rule in *Cornelison,* that a full credit bid at a foreclosure sale extinguishes the underlying lien, was held in *Ballengee* v. *Sadlier* (1986) 179 Cal.App.3d 1, 5 [224 Cal.Rptr. 301], to apply as well to a foreclosing junior lienholder as it does to a foreclosing senior lienholder. In *Ballengee,* a second trust deed holder foreclosed on the property and made a full credit bid for the property at the trustee's sale. The court held that such a full credit bid "resulted in a total satisfaction of the secured obligation and extinguishment of the lien." (*Ibid.*)

Caruso and St. John also point out that they agreed to be junior lienholders to the existing senior lien on the Great Western note between Great Western and Rosen and Ware, where one of the terms in the senior lien was that insurance proceeds could be used either to repair the property or to

reduce the amount of the note.[1] As Caruso and St. John view the matter, the parties involved in the senior lien on the Great Western note acted to the detriment of the junior lienholders, Caruso and St. John, in modifying the senior lien by placing the insurance proceeds in a joint fund and not using the money in the manner provided in the trust deed.

However, the senior lien was in no way modified by placing into a joint fund the check from the insurance proceeds on which Caruso and St. John were, of course, not payees. The pertinent insurance provision in the deed of trust as to the senior lien did not, by its terms, preclude such a joint fund as an interim solution prior to judicial resolution of how to apply the insurance proceeds. The pertinent insurance provision specifically provides that the beneficiary may apply the proceeds *"at such time or in the manner and amount"* (italics added) as it determines to reduce the indebtedness secured by the trust deed or to repair the property. Particularly, in view of the broad and unrestricted nature of the insurance provision as to the time and manner of the application of the insurance proceeds, Great Western did not act improperly as to the insurance proceeds.

Indeed, Great Western acted appropriately as to the insurance proceeds in trying to resolve the dispute with Rosen and Ware and then seeking a fairly prompt judicial resolution. Caruso and St. John would have liked Great Western to have unilaterally applied the insurance proceeds to their benefit, even though Rosen, Ware and Great Western were the joint payees on the insurance check, and the payees had an ongoing dispute as to how to apply the insurance proceeds. When the original action was filed in August of 1986, Rosen and Ware repeatedly advised both Great Western and Caruso of their intentions to remedy the defects in the Castlemare Road property. After Rosen and Ware advised Great Western that they had ceased all efforts to remedy the defects, the dispute among Rosen, Ware and Great Western was resolved in approximately a year. The entire action was settled with Rosen and Ware a little over two years after the complaint was filed.

In sum, although the request by Caruso and St. John for injunctive relief might have been appropriate to prevent a trustee's sale until the court could

---

[1] The pertinent insurance provision in the deed of trust as to the senior lien was as follows: "Trustor shall, at Trustor's expense, provide and maintain in force at all times with respect to the property, fire and other types of insurance as may be required by Beneficiary. All of such insurance policies shall have a loss payable endorsement in favor of Beneficiary and shall be for a term and in form, content, amount, and with such companies, as may be satisfactory to Beneficiary . . . . [¶] Any part or all of the amount collected on any fire or any other insurance policy may be applied by Beneficiary upon any indebtedness secured by this Deed of Trust at such time or in the manner and amount as Beneficiary may determine, or at the option of Beneficiary, without reducing the indebtedness secured hereby, may either be used to replace, restore, reconstruct the property to a condition satisfactory to Beneficiary or be released to Trustor."

determine by an accounting the correct amount upon which the foreclosure is based (see *Producers Holding Co.* v. *Hill* (1927) 201 Cal. 204, 209 [256 P. 207]; *Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1504 [236 Cal.Rptr. 59]; *Stockton* v. *Newman* (1957) 148 Cal.App.2d 558, 563-564 [307 P.2d 56]), Caruso and St. John may only question the amount due to the extent that they have an interest in the insurance proceeds, which they do not pursuant to *Cornelison* and *Ballengee.* Moreover, even assuming arguendo that Caruso and St. John, as a matter of equity, stood in the shoes of Rosen and Ware with the ability to challenge the note underlying the Great Western deed of trust, the pertinent insurance provision was simply not violated by Great Western which also, under all the circumstances, acted fairly and appropriately.

## II. *The Award of Attorney's Fees*

Caruso and St. John also dispute the trial court's award to Great Western of over $32,000 in attorney's fees which were made a lien on the property. Caruso and St. John urge that where a beneficiary attempts to foreclose on real property, the statutory schedule (Civ. Code, § 2924c, subd. (d)) applies, which limits the attorney's fees recoverable in the present case to $220.

■ However, the statutory schedule does not so restrict the attorney's fees in the present case. As explained in *Bruntz* v. *Alfaro* (1989) 212 Cal.App.3d 411 [260 Cal.Rptr. 488], ". . . Civil Code section 2924c subdivisions (c) and (d) provide the maximum sums which may be claimed as expenses of foreclosing on the property. *But aside from the expenses of foreclosure, there are other costs, including legal fees, which may be incurred by a creditor in protecting the security.* Under appropriate contract provisions, such expenses may be treated as collateral advances added to the amount of the debt. Whether a particular expense may be treated as an advance, or is subject to the limitations in Civil Code section 2924c, will depend upon the purpose for which the expense was incurred and the particular contractual terms involved." (212 Cal.App.3d at p. 421, italics added.)

*Bruntz* therefore distinguishes between attorney's fees incurred in prosecuting a foreclosure, which are severely limited by the fee schedule in Civil Code section 2924c, subdivision (d), and attorney's fees incurred in a manner considered collateral to the foreclosure, which are not so limited. The trial court reviewed Great Western's detailed summary of attorney's fees, and granted attorney's fees which reflected the total fee requested. However, the court failed to distinguish between fees actually incurred as an expense of the foreclosure process, which fees are statutorily limited, and other fees incurred, such as those relating to the protection of the lender's

deed of trust, which are not so limited. The court also granted the request for all of Great Western's attorney's fees, even for fees relating to legal work performed prior to July of 1988 when Caruso and St. John intervened in the action. Caruso and St. John are not responsible for attorney's fees incurred during the approximately two-year period prior to when they entered the action. Accordingly, the matter must be remanded for an appropriate determination of attorney's fees.

### III. *The Request for Sanctions*

Finally, Great Western requests that sanctions be awarded against Caruso and St. John and their counsel for filing a frivolous and unmeritorious appeal. Particularly in view of the valid claim of Caruso and St. John as to the erroneous determination of attorney's fees, we cannot conclude that the appeal was frivolous or taken solely for delay. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650 [183 Cal.Rptr. 508, 646 P.2d 179].) The request for sanctions therefore is denied.

### DISPOSITION

The matter is remanded for a redetermination of attorney's fees and, in all other respect, the judgment is affirmed. Great Western is entitled to costs on appeal.

Turner, P. J., and Ashby, J., concurred.