[Civ. No. 12094. First Dist., Div. One. Oct. 5, 1942.]

I. N. INSKEEP et al., Appellants, v. THE BEAR CREEK COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

724

Adams & Griswold, Claude H. Adams and Hugh H. Griswold for Appellants.

C. Ray Robinson, Willard B. Treadwell, Loraine B. Rogers, Robert H. Walker and W. Eugene Craven for Respondents.

KNIGHT, J.—In November, 1930, Land Owners Packing Company sold a parcel of land situate in Merced County to the plaintiff I. N. Inskeep, taking as part payment a promissory note for $864.70, secured by a deed of trust covering the land sold. The land was adapted to the growing of figs, and on October 1, 1932, Inskeep leased the land back to the packing company for a term of thirteen years on a crop-sharing basis. Subsequently the packing company assigned the deed of trust and its lease to the Bear Creek Company; Simonson-Harrell Abstract Company, Ltd., was substituted as trustee, and on January 4, 1940, the property was sold at trustee's sale for $400 to R. D. Leuschner, president of the Bear Creek Company. In due time prior to the sale Inskeep made a tender of $321.50, as full payment of the amount due, but the tender was rejected as insufficient. Thereafter Inskeep and Edith H. Stevens, the holder of a conveyance given by Inskeep as security for the payment of money, joined in bringing this action to set aside the trustee's sale, for an accounting, and to quiet title to the land. They named as parties defendant the Bear Creek Company, its president, R. D. Leuschner, and the trustee abstract company; and the first two named defendants filed a cross-complaint to quiet the company's title to the land. The trial court denied the relief asked for by plaintiffs, and gave judgment for defendants, quieting the company's title to the land; and from said judgment plaintiffs appeal. The question presented relates to the sufficiency of Inskeep's tender of $321.50. He had made two previous tenders in lesser amounts, which were likewise rejected, and the determination of the question of the sufficiency of the third tender involves the transactions which took place between the parties before and after the making and rejection of the two previous tenders.

The promissory note secured by the trust deed was dated November 13, 1930, and was made payable in quarterly installments of $100 each, commencing February 1, 1931, with interest at 6 per cent. By the terms of the thirteen-year lease the lessee was to operate the fig orchard, meet all necessary charges and expenditures, and after sale of the figs pay the lessor as rent 75 per cent of the net proceeds of the sales. The Bear Creek Company, after succeeding to the interests of the packing company, continued to operate the property under the lease. On July 13, 1939, notice of default of payment and election to sell the property was re-

corded; and on October 9, 1939, plaintiff Inskeep tendered to the trustee the sum of $200, which was rejected. On October 14, 1939, the required notice was given for the sale of the property on November 3, 1939, under the deed of trust, but on November 2, 1939, plaintiffs commenced an action, No. 12747, in the superior court, against these same defendants for an accounting and to enjoin the sale under the deed of trust. A restraining order was issued, and the trustee's sale was postponed from time to time until January 4, 1940. Meanwhile the cause was tried on the merits; and on December 21, 1939, the court rendered judgment in favor of the defendants, the restraining order was dissolved, and costs were awarded defendants in the sum of $17.65. The judgment was based on findings to the effect that the $200 tender was "not sufficient to pay the amount owing to the defendant and the costs of the escrow"; that the costs of the title company in connection with the escrow were $35.50; and that "the sum of $241.43 was the amount owing by plaintiff to the defendant under the deed of trust, at the date of the tender of $200.00." No complete accounting was had, but the court had before it the auditor's reports, on which it apparently based its findings. The trust deed provided that the grantor should pay to the beneficiary or trustee the amount of attorneys' fees incurred in any suit commenced or pending "affecting said premises, or any part thereof, or the title thereto." In deciding the case the trial judge filed a memorandum opinion, wherein he stated: "The court in making its computation allowed costs of only $35.50 to be assessed against plaintiff, this being the Simonson & Harrell bill. *Nothing was allowed by way of attorney's fee, transfer or recording fees.*" (Italics ours.) No appeal was taken from the judgment in that suit. Thus it will be seen that the total amount found by the court in action No. 12747 to be due was $294.58 ($241.43 principal, plus $35.50 title costs; and $17.65 costs of suit).

On December 26, 1939, plaintiff Inskeep made a second tender of $261. The check therefor was held by defendants until January 3, 1940, when at about 4:30 in the afternoon it was returned to plaintiffs' attorneys' office with the following written statement: "January 3, 1940. Inskeep versus Bear Creek Company. Bear Creek Company — Creditor, Mr. Inskeep — Debtor. Principal, etc., $241.43; Simonson-Harrell Sale costs, $35.50; Costs of Suit, $17.65; *Title search, $45.00; Special auditing, James J. Uhle, $100.00; Attorneys'*

*fees, $100.00; Total $539.58.''* (Italics ours.) The explanation offered for the delay in rejecting the tender was that Leuschner, the president of the Bear Creek Company, had been away over the holidays and did not return until January 3d. However, thereupon and on that same day plaintiffs' attorney delivered the check to the president of the Simonson-Harrell Company, the trustee, with instructions to deliver it to the Bear Creek Company. The sale under the deed of trust was set for 11:20 on the morning of the next day, January 4th; and about 10 o'clock that morning the check was returned to plaintiffs' attorney. He then went to the courthouse steps, where the sale was to be held, and just before the time set for the sale he tendered to Leuschner $321.50 in cash, which Leuschner refused to accept, stating that it was ''insufficient.'' Thereupon the sale took place; Leuschner bid in the property for $400, and the trustee's deed was executed to the Bear Creek Company that same day.

Subsequently plaintiffs brought suit for $50,000 damages, but it was voluntarily dismissed before trial; and on April 10, 1940, plaintiffs brought the present action. It was tried on the issues raised by the complaint and the cross-complaint, before a different judge, and the court in paragraph VIII of its findings found that there was due on the obligation secured by said deed of trust at the date of sale, the sum of $241.43 principal; trustee's fees, $35.50; costs, $17.85; interest, $4.57; also a title fee of $45; an auditing fee of $100; attorneys' fees for the beneficiary, $100; and additional attorneys' fees for the trustee of $250; making a total of $798.71. Judgment was entered accordingly in favor of defendants, and they were adjudged to be the owners of the property.

It appears from the record that at the time of the first tender and at the time of the sale the Bear Creek Company was holding for plaintiff Inskeep's credit over 7,000 pounds of dried figs, 75 per cent of the proceeds from the sale of which, when a sale was made, to be credited to plaintiff under the terms of the lease, but the amount due could not be determined because a sale had not been made. In this regard one of the conclusions of law was ''That inasmuch as a portion of the crop grown on the premises described in plaintiffs' complaint, during the year 1939, had not been sold, plaintiff is not entitled to credit for the value of the unsold portion thereof, and if entitled to credit the amount is not enough

to make the tender sufficient.'' However, no attempt has been made to claim that this crop or the amount it represents operates in any way to set off the amount due under the deed of trust. Plaintiffs' attorney testified that he ''left the dried fruit out of the deal'' because he ''didn't know how much it would be.'' The deed of trust and the lease are treated as entirely separate transactions; but apparently there was some dispute over the amount due plaintiff from the crops on which plaintiff based his suit for an accounting.

It is apparent that the third tender of $321.50 was ample to cover the amount found to be due by the trial court in the first action, with added interest up to the date of sale. That being so, the tender was legally sufficient for all purposes unless the items subsequently added by defendants constituted valid charges under the terms of the trust deed and were incurred subsequent to the rendition of the judgment in the first action and prior to the trustee's sale. It is our conclusion that the trial court's finding in the present action that those added items were properly chargeable against the trustor cannot be sustained.

The challenged items consist of the following: (1) title fees, $45; (2) auditing fee, $100; (3) beneficiary's attorneys' fees, $100; (4) trustee's attorneys' fees, $250. With respect to the last item, trustee's attorneys' fees $250, the evidence shows that prior to the trial of the present action the attorneys for the trustee rendered a bill to the trustee for $254, and that it was paid by the Bear Creek Company; but the representative of the trustee title company, who was called as a witness by the defendants, testified positively that the services for which that fee was paid were those rendered in behalf of the trustee in the $50,000 damage suit to which the trustee had been made a party defendant; and that no charge whatever was made by the trustee's attorneys for services rendered in action No. 12747. Therefore, since the $50,000 damage suit was not filed until after the trustee's sale, whatever fees were incurred in connection therewith cannot be considered in determining the amount due from the trustor on the date of the sale. It is true that the president of the Bear Creek Company gave testimony to the effect that the legal services for which this fee was paid were rendered in the first action; but it must be presumed that the written demand defendants delivered to plaintiffs' attorney the day preceding the sale was all inclusive of the amounts then claimed to be due the defendants, and no reference what-

ever was made therein to this fee. The defendants are doubtless concluded by the demand made at that time. As to the first item, title fee, $45, the undisputed evidence of the representative of the trustee title company shows that this was the identical charge covered by the $35 allowance made by the trial court in the first action for "the costs of Simonson-Harrell Company in connection with the escrow"; moreover, that such was the fact is made clear by the statement made by the trial court in that action in its written opinion with reference thereto. The third item, special auditing fee, $100, represents a charge incurred by the Bear Creek Company in auditing its records and those of its assignor, Land Owners Packing Company, over a period of ten years to determine for the purposes of the trial of action No. 12747 just what was the state of the debt secured by the trust deed. The trust deed made no provision, however, for the allowance of such a charge to be made against the trustor, and at the trial of the present action counsel for defendants frankly admitted that it was a "questionable" charge. In any event, no allowance was made therefor by the trial court in the first action, and defendants are concluded thereby with respect to transactions occurring prior to the date of the entry of judgment therein.

 The remaining item, $100 attorneys' fees for the beneficiary's counsel, was listed among the items set forth in defendants' written demand delivered to plaintiffs' attorney the day preceding the sale; but the president of the Bear Creek Company testified unequivocally that the services represented by the charge were all rendered in connection with action No. 12747, and prior to the rendition of judgment therein, and none "subsequent" thereto; and it is apparent from the trial court's written opinion therein that it intended to make no allowance therefor. As said by the court in *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal. (2d) 740, 750 [47 P. (2d) 273], citing *Estate of Felton*, 176 Cal. 663, 667 [169 Pac. 392], and *Coakley v. Ajuria*, 209 Cal. 745, 749 [290 Pac. 33], an "opinion of the trial judge may be considered for the purpose of discovering the process by which the trial judge arrived at his conclusions, or when the opinion furnishes the basis of the court's action in its decision of the case."

 Respondents argue that the court's finding in action No. 12747 is in effect that attorneys' fees were not due at the

time of the first tender, but that they were incurred subsequent to that date, in the preparation of action No. 12747, and that the trust deed itself made provision· for the allowance of attorneys' fees in an action involving the trust deed; that therefore they were properly added to the amount due, and the trial court's finding in that action did not operate as a bar thereto. However, the opinion filed by the court in that action makes it clear that it was intended that no allowance of attorneys' fees should be made in that action, either as of the date of tender or as of the date of judgment.

It is our conclusion, therefore, that since the sum of $321.50 tendered on the morning of the sale was sufficient to pay the amount then due under the trust deed, plaintiffs were entitled to an annulment of the trustee's sale.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied November 4, 1942, and respondents' petition for a hearing by the Supreme Court was denied December 3, 1942.