[No. B173302. Second Dist., Div. Six. Feb. 16, 2005.]

JERVE M. JONES et al., Plaintiffs and Appellants, v.
UNION BANK OF CALIFORNIA, Defendant and Appellant.

■■■■■■■■■■■■

COUNSEL

Norman, Dowler, Sawyer, Israel, Walker & Barton, Michael G. Walker, Mathew P. Guasco and Gilbert Dreyfuss for Plaintiffs and Appellants.

Jeffer Mangels Butler & Marmaro, John L. Hosack and Andrea Y. Slade for Defendant and Appellant.

OPINION

**GILBERT, P. J.**—A lender successfully defends an action to set aside a foreclosure sale. Here we hold the antideficiency provisions of Code of Civil Procedure section 580d do not prohibit an award of attorney fees. In addition, Civil Code sections 2924c and 2924d do not limit the amount of fees the court may award. We affirm.

## FACTS

In June of 1988, Peppertree Corporate Business Park and three other entities borrowed $8,700,000 from the predecessor of Union Bank of California (hereafter Bank). The loan was personally guaranteed by Jerve M. and Alice Jones and Gilbert and Evelyn Dreyfuss. (Borrowers and guarantors are hereafter collectively Borrowers.) The loan was secured by a trust deed on a 35-acre parcel in the City of Simi Valley, known as the Peppertree parcel. The parcel was later subdivided into eight lots.

The note provided that if it is not paid, the makers would "pay all costs of collection including, . . . reasonable attorney fees, and all expenses in connection with the protection or realization of the collateral securing th[e] Note . . . ." The guarantee of the note contained a provision for attorney fees in "proceedings involving Guarantors that in any way affect the exercise by Lender of its rights and remedies hereunder."

In December of 1992, the note was in default. The Bank agreed to extend the due date for repayment, but demanded additional collateral. The parties agreed the note would be secured by a lot in Maryland, known as the "Clinton" parcel, and a lot in Flintridge, known as "Lot 66," in addition to the Peppertree parcel.

In June of 1995, the note was again in default. The parties signed a forbearance agreement that extended the due date. The agreement provided in part: "In any action between the parties seeking enforcement of this Forbearance Agreement, . . . or in connection with the Peppertree property, . . . the prevailing party in such action shall be awarded . . . its reasonable attorney fees." An extension agreement executed in December of 1995 contained a similar provision for attorney fees in any action "in connection with the Peppertree Property . . . ."

In January of 1996, First American Title Insurance Company (hereafter First American) as trustee conduced a nonjudicial foreclosure of the Peppertree property. The Bank acquired title with a credit bid of $2,150,000. The $3,860,228 balance of the debt was satisfied through foreclosures on the Clinton parcel and Lot 66. In January of 1996, the Bank conveyed its interest in the Peppertree property to Heritage Oak Partners (hereafter Heritage).

In December of 1996, Gilbert Dreyfuss and other borrowers brought an action against the Bank in Los Angeles Superior Court (hereafter Los Angeles action). The Borrowers alleged that the nonjudicial foreclosure of the Peppertree property precluded foreclosure of the Clinton parcel and Lot 66.

The trial court decided the Los Angeles action in favor of the Bank. The Court of Appeal and the Supreme Court affirmed. (*Dreyfuss v. Union Bank of California* (2000) 24 Cal.4th 400 [101 Cal.Rptr.2d 29, 11 P.3d 383].) The trial court awarded attorney fees to the Bank, and we affirmed. (*Dreyfuss v. Union Bank of California* (March 25, 2003, B150552) [nonpub. opn.].)

While the Los Angeles action was pending, the Borrowers discovered that First American was not the trustee at the time it purported to foreclose on the Peppertree property. Instead, a substitution had been recorded replacing First American with a different trustee. The Borrowers commenced the instant action in Ventura County Superior Court to vacate the sale and quiet title (hereafter Ventura action). The Borrowers named Heritage and First American as well as the Bank. The Bank cross-complained seeking reformation, among other relief. The trial court found in favor of the Borrowers. The Bank, Heritage and First American appealed.

Prior to the resolution of the appeal, Borrowers moved for an award of attorney fees as the prevailing party in the Ventura action. Borrowers requested $642,705.53 through trial. The trial court awarded $450,000.

Borrowers also entered into agreements with Heritage and the Bank prior to the resolution of the appeal. Heritage agreed to dismiss its appeal in the Ventura action, quitclaim its interest in the Peppertree property to the Borrowers and to pay $1,400,000 for two parcels of the Peppertree property. The Bank was not a party to the agreement.

The Borrowers and the Bank entered into an escrow agreement concerning the Clinton property. They agreed that the property would be sold and the money deposited into escrow. The Bank would receive the proceeds from the escrow if it ultimately prevailed in the Ventura action.

In March of 2003, we issued an opinion reversing the judgment in the Ventura action. (*Jones v. First American Title Ins. Co.* (2003) 107 Cal.App.4th 381 [131 Cal.Rptr.2d 859].) We concluded the trial court failed to apply the doctrine of reformation to correct the documents to place First American as trustee for the foreclosure sale.

On remand, the trial court reformed the documents and declared the foreclosure sale was valid. The court also declared that the Bank acquired title at the foreclosure sale and that its transfer to Heritage was valid.

The Bank made a motion for attorney fees. Because the judge who presided at trial had retired, the motion was heard by a different judge. The trial court awarded Bank $1 million in fees.

## DISCUSSION

*Borrowers' Appeal*

### I

Borrowers contend the award of fees is precluded by antideficiency legislation.

Code of Civil Procedure section 580d prohibits a deficiency judgment in any case in which the property has been sold under a power of sale in a deed of trust or mortgage.[1] Borrowers argue the award of attorney fees constitutes a deficiency judgment.

*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496 [236 Cal.Rptr. 59], rejected a similar argument. There the borrower brought an action to enjoin foreclosure of a deed of trust. The borrower lost the action

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

and the court awarded the lender attorney fees pursuant to a clause in the note. The borrower claimed the lender's effort to collect the award of fees after a nonjudicial foreclosure was barred by section 580d. In rejecting the borrower's argument, the court stated: "In considering the purposes of section 580d, we conclude that when a creditor-beneficiary prevails in an action brought by the debtor-trustor to restrain foreclosure of the security and is awarded attorney's fees and costs, the subsequent sale of the property at a trustee's sale does not render the judgment for attorney's fees and costs unenforceable. Section 580d does not by its express terms apply in such a case, nor does the policy behind section 580d dictate such a result. Enforcement of the judgment for attorney's fees and costs is not simply a subterfuge for the collection of a deficiency on the secured note. The award for attorney's fees and costs is neither measured by, nor interrelated to, a deficiency on the note. Such an award is not attributable to a general condition of the real estate market, but is the result of the debtor-trustor's voluntary act in bringing an unmeritorious suit which the creditor-beneficiary was required to make expenditures to defend. The judgment for attorney's fees and costs is entirely independent of the problems encompassed by antideficiency legislation and the enforcement of such a judgment will not affect the parity of remedies such legislation is intended to foster. [Citation.] For these reasons we reject plaintiffs' argument that the judgment for attorney's fees and costs must be deemed unenforceable by virtue of section 580d. [Fn. omitted.]" (*Passanisi, supra,* at p. 1509.)

██ A distinction between *Passanisi* and this case is that in *Passanisi* the borrowers sought to enjoin the foreclosure sale, whereas here Borrowers sought to set aside the sale. If anything, this case presents an even more compelling reason to uphold an award of fees. Where, as here, fees are awarded in an action that was not even contemplated prior to foreclosure, it makes no sense to say that the fees are part of the indebtedness satisfied at the foreclosure sale.

The Borrowers' reliance on *Dreyfuss v. Union Bank of California, supra,* 24 Cal.4th 400, is misplaced. There the court held that seriatim foreclosure of multiple properties securing a single debt did not violate section 580d. The court did not discuss an award of attorney fees.

*Inskeep v. Bear Creek Company of California* (1942) 54 Cal.App.2d 723 [129 P.2d 401], is of assistance to neither Borrowers nor Bank. There the borrower brought an action to set aside a foreclosure sale. He claimed that he had tendered a sufficient amount to satisfy the debt prior to the sale. The lender claimed a $250 charge for attorney fees should have been included in borrower's preforeclosure tender. The Court of Appeal determined the lender was precluded from including the $250 fee in calculating the amount due

prior to foreclosure. The lender had made no reference to the fee in his preforeclosure demand, and there was evidence the fee was incurred in litigation filed after foreclosure. (*Id.* at p. 728.) *Inskeep* does not involve antideficiency legislation. It does not even involve a deficiency. The only question was whether the borrower tendered the amount necessary to prevent foreclosure. It is irrelevant to this case.

Borrowers argue that if an award of fees is not barred by antideficiency legislation, the award is strictly limited by Civil Code sections 2924c and 2924d. Specifically, Borrowers claim Civil Code section 2924d, subdivision (b), limits fees in this case to no more than $38,600.

■ Civil Code sections 2924c and 2924d provide for maximum sums that may be claimed as expenses of foreclosing on the property. These maximum amounts do not include other costs, including legal fees, which may be incurred by a creditor in protecting the security. (See *Caruso v. Great Western Savings* (1991) 229 Cal.App.3d 667, 676 [280 Cal.Rptr. 322].) Such costs and fees were incurred in the instant case, are not limited by Civil Code sections 2924c or 2924d. (*Caruso, supra*, at p. 676.)

## II

Borrowers contend our prior opinion precludes an award of attorney fees to Bank.

In the Los Angeles action, Borrowers unsuccessfully challenged the Bank's right to foreclose on the Clinton property and Lot 66 after a nonjudicial foreclosure on the Peppertree property. (*Dreyfuss v. Union Bank of California, supra*, 24 Cal.4th 400) The trial court awarded Bank attorney fees in that action and Borrowers appealed. Borrowers contended on appeal that the trial court should have considered their success in the Ventura action in determining the prevailing party in the Los Angeles action. We responded: "Regardless of whether the foreclosures on the Maryland property and Lot 66 are invalidated by the Ventura action, the claims in that action are entirely different from the claims brought here; indeed, the Ventura action is not even an action on the contract." (*Dreyfuss v. Union Bank of California, supra*, B150552.)

Borrowers focus on our statement that the Ventura action is not on the contract. The statement is clearly dicta. Moreover, the attorney fees provisions at issue here are broader than actions on the contract. They include any action between the parties "in connection with the Peppertree property." Such provisions are enforceable according to their terms. (See *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342–1343 [5 Cal.Rptr.2d 154].)

In any event, Borrowers' prior successful motion for attorney fees in the same action estops them from claiming Bank has no right to the fees. (See *M. Perez Co. v. Base Camp Condominiums Ass'n. No. One* (2003) 111 Cal.App.4th 456, 468–469 [3 Cal.Rptr.3d 563] [judicial estoppel prevents a party from taking inconsistent positions in the same or different judicial proceeding].)

### III

Borrowers contend the trial court abused its discretion in determining that Bank is the prevailing party.

There is no question that the judgment ultimately entered was unequivocally in favor of Bank. Borrowers, however, urge that we look beyond the judgment to its settlements with Heritage and Bank. (Citing *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1156 [70 Cal.Rptr.2d 769] [trial court entitled to take settlement into account in determining which side prevailed].) They assert that once the settlements were made they had achieved all of their litigation objectives. Thereafter, they claim the litigation was kept alive solely for attorney fees. (Citing *Flynn v. Page* (1990) 218 Cal.App.3d 342, 348 [266 Cal.Rptr. 830].)

But Bank was not a party to the settlement between Borrowers and Heritage. Whatever the settlement might say as to who prevailed between Borrowers and Heritage, it says nothing about who prevailed between Borrowers and Bank.

What Borrowers characterize as a settlement with Bank was simply an escrow agreement. Funds from the sale of the Clinton property were placed into escrow. The funds would be distributed to Bank if it prevailed in the Ventura action. Given the ultimate resolution of the Ventura action, the agreement cannot reasonably be viewed as a victory for Borrowers.

The trial court did not abuse its discretion in determining that the Bank is the prevailing party.

### IV

Borrowers contend the trial court abused its discretion in awarding $1,000,000 in fees.

We must affirm an award of attorney fees absent a showing that the trial court clearly abused its discretion. (*Track Mortg. Group, Inc. v. Crusader Ins. Co.* (2002) 98 Cal.App.4th 857, 868 [120 Cal.Rptr.2d 228].) An abuse of

discretion is shown when the award shocks the conscience or is not supported by the evidence. (*Id.* at p. 868; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545 [3 Cal.Rptr.3d 604].)

Here Bank's attorneys declared Bank incurred a total of $670,221 in attorney fees for trial and posttrial proceedings through September of 1999. Borrowers do not attack any particular billing as unnecessary or unreasonable. Instead, they point out that four years earlier Bank requested $559,831 in attorney fees through the end of trial in March of 1999. But there is no inconsistency. The original request for fees covers only through trial. The most recent request for fees covers not only the trial but also posttrial procedures. Borrowers have failed to carry their burden of showing an abuse of discretion.

Borrowers also argue that an award of $400,000 for the appeal shocks the conscience. Borrowers concede the trial court did not apportion the award of fees between trial court work and appellate work. Borrowers obtain the $400,000 figure by assuming the trial court did not award the entire $670,221 requested for work prior to the appeal. But we must assume the judgment or order is correct except where contradicted by the record. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 349, p. 394.) In the absence of an apportionment by the trial court, we must assume the court awarded $329,779 for the appeal.

In attacking the amount awarded for the appeal, Borrowers again do not point to any specific billing as unnecessary or unreasonable. Instead, they suggest that we determine the award to be unreasonable by applying our experience as an appellate court.

The appeal had a voluminous record, complicated facts and presented fairly complex legal issues. Applying the appropriate standard of review, we conclude the trial court did not abuse its discretion in determining attorney fees.

*Bank's Appeal*

V

Bank contends the trial court erred in taxing the portion of its costs not expressly allowed under section 1033.5.

Section 1033.5, subdivision (a), specifies items allowed as costs and subdivision (b) specifies items not allowed. The court awarded only those costs allowed by section 1033.5. Bank argues, however, that the forbearance

and extension agreements expressly provide that the award of costs to the prevailing party shall not be limited to taxable costs.

Bank cites section 1032, subdivision (c). That subdivision provides: "Nothing in this section shall prohibit parties from stipulating to alternative procedures for awarding costs in the litigation pursuant to rules adopted under Section 1034." Section 1034 requires the Judicial Council to adopt rules for claiming and contesting allowable prejudgment costs and costs on appeal, as well as rules establishing allowable costs on appeal.

█ On its face, section 1032, subdivision (c), allows the parties to agree to "procedures" for awarding costs. It does not expressly authorize the parties to expand by agreement the items allowable as costs.

Bank relies on *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491–492 [54 Cal.Rptr.2d 888]. There the court held that sophisticated parties may agree to a broader standard of costs than allowed by section 1033.5. Bank fails to mention, however, that in *Arntz* the costs were pleaded and proved pursuant to a procedure stipulated by the parties.

█ Because costs other than those allowed under section 1033.5 are not based on statute, they must be specifically pleaded and proved at trial rather than included in a memorandum of costs. (See *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1627 [28 Cal.Rptr.2d 878]; *First Nationwide Bank v. Mountain Cascade, Inc.* (2000) 77 Cal.App.4th 871, 878–879 [92 Cal.Rptr.2d 145].) Only *Bussey v. Affleck* (1990) 225 Cal.App.3d 1162, 1166 [275 Cal. Rptr. 646], has awarded nonstatutory costs without pleading and proof. We join other courts that have considered the matter and refuse to follow it. (See, e.g., *Ripley, supra*, at pp. 1625–1626.) Because here the Bank did not plead and prove nonstatutory costs, the trial court did not err in refusing to award them.

The judgment is affirmed. Costs are awarded to Bank.

Bank's motion for attorney fees incurred in this case shall be decided by the trial court. (See *MacKinder v. OSCA Development Co.* (1984) 151 Cal.App.3d 728, 739 [198 Cal.Rptr. 864].)

Yeagan, J., and Coffee, J., concurred.

A petition for a rehearing was denied March 11, 2005, and the opinion was modified to read as printed above. The petition of plaintiffs and appellants for review by the Supreme Court was denied June 8, 2005.