Filed 1/4/16  Youssef v. Wheatley CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GAMIL YOUSSEF,<br><br>          Plaintiff and Appellant,<br><br>     v.<br><br>GWIN WHEATLEY et al.,<br><br>          Defendants and Respondents. | B257828<br><br>(Los Angeles County<br>Super. Ct. No. BC495441)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:[*]

It is ordered that the opinion filed herein on December 7, 2015, be modified as follows:

Page 11, second full paragraph, delete the fourth sentence, so that the entire paragraph reads as follows:

Apart from overlitigating the case, plaintiff's attorney submitted billings that are exorbitant on their face.  He claimed six hours to prepare a complaint on Judicial Council forms, plus another three hours to prepare an amended complaint that is nearly identical to the original pleading.  He billed 14 hours *per day* for the first two days of trial, and 12 hours for the third day, even though court was in session for six hours each day.  There is no explanation why plaintiff's counsel spent an additional six to eight hours per day working on the case outside the

---

[*]     BOREN, P.J.          ASHMANN-GERST, J.          HOFFSTADT, J.

courtroom, given that he had already spent 73 hours on "trial prep." The trial court could readily find that the claimed fees were grossly inflated, and could reduce them to the reasonable amount of $10,000.

This modification does not effect a change in judgment.

The petition for rehearing is denied.

Filed 12/7/15  Youssef v. Wheatley CA2/2 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GAMIL YOUSSEF,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>GWIN WHEATLEY et al.,<br><br>    Defendants and Respondents. | B257828<br><br>(Los Angeles County<br>Super. Ct. No. BC495441) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor E. Chavez, Judge.  Affirmed.

Akudinobi & Ikonte, Emmanuel C. Akudinobi, Chijioke O. Ikonte for Plaintiff and Appellant.

Veatch Carlson, Cyril Czajkowskyj for Defendants and Respondents.

_____

A tenant sued his landlord and apartment managers for violating the Fair Employment and Housing Act (FEHA). A jury awarded the tenant $5,000. The tenant challenges trial court rulings granting the defense a directed verdict on the tenant's claims for malicious prosecution and punitive damages; refusing to allow evidence relating to a neighbor's activities after this lawsuit was filed; and awarding the tenant attorney fees of $10,000. We find no error and affirm the judgment.

## FACTS

Plaintiff Gamil Youssef has lived in an apartment on Tamarind Avenue in Hollywood since 1997. The owner of the apartment building was Robert Burgin.[1] The general manager is defendant Fredrik Vartanian, who was born in Iran but describes himself as Armenian. The on-site manager/handyman is defendant Zareh Galladian, who is Armenian. Vartanian and Galladian are aware that plaintiff is originally from Egypt. Plaintiff speaks Arabic and English. Plaintiff and Galladian sometimes speak Arabic with each other.

Despite his lengthy residency, plaintiff was "treated differently" from other tenants, who received new carpets, new refrigerators, or new stoves while plaintiff was denied these things. When plaintiff raised health and safety issues, Vartanian threatened to evict him for complaining. Plaintiff was repeatedly denied one of the storage places in the building that were given to other tenants.

Plaintiff wrote to building owner Burgin in 2008, saying that he was being harassed and intimidated by Vartanian. Burgin told plaintiff that so long as he paid his rent, he would not be evicted. Things worsened after Burgin died.

On May 21, 2009, plaintiff's living room and kitchen were flooded, soaking his electronic items and the carpet. Plaintiff notified Vartanian and Galladian about the water intrusion. The upstairs neighbor, Trinidad Dillion, refused to open her door, so Galladian called the police to force Dillion to let him into the unit. Dillion had left the

---

[1]     Burgin died in 2011 and the Robert Burgin Trust took ownership. Defendant Gwin Wheatley is Trustee of the Burgin Trust.

2

faucet running in her kitchen, allowing it to overflow. Plaintiff wrote letters to property owner Burgin in August 2009, complaining that the damage caused by the flood was unrepaired and that he was being harassed by Vartanian and Dillion. Plaintiff reported the problem to the housing department.

Plaintiff had other difficulties stemming from Dillion's behavior. She dropped trash and dirty laundry in front of his unit. Her smoke alarm sounded several times. There was a natural gas odor—because Dillion left the stove on, but unlit—that plaintiff brought to the attention of management. Dillion dropped heavy things on the floor after midnight and used a machine that created noise and vibration in plaintiff's unit below. Despite plaintiff's complaints, and Vartanian's and Galladian's admitted awareness, these nuisances persisted up to the time of trial, and Dillion refused to move to a different apartment in the building. Plaintiff's request to move to another apartment was denied.

On April 25, 2012, plaintiff experienced a second water intrusion from Dillion's apartment. Water flowed into his kitchen and dining room through the overhead light fixtures. Galladian was not at home, so plaintiff ran upstairs to tell Dillion that she was flooding his unit. At first, she refused to open the door, but plaintiff convinced her to let him in to turn off the water. Later that day, Galladian removed water from plaintiff's light fixtures. Plaintiff telephoned and sent a letter to Vartanian about the flood.

On April 28, 2012, plaintiff had an altercation with Vartanian, who was at the premises to give Dillion a notice to perform or quit following the second flood. Plaintiff was driving up to the apartment house when he saw Vartanian. Plaintiff approached Vartanian to hand him a letter. Plaintiff denies instigating a fight, though an eyewitness testified that plaintiff was the aggressor. According to plaintiff, Vartanian "screamed in my face and like exploded completely," using obscenities and punching and kicking plaintiff.

Plaintiff went to his apartment and called the police. Vartanian also called the police. When the police arrived, they searched and briefly handcuffed plaintiff, who was surprised because he was the one who was attacked and called 911 for help. Plaintiff sustained bruises and cuts, and had blood in his urine after the attack.

3

After this incident, plaintiff felt intimidated and harassed by Vartanian, Galladian, and Galladian's brother, who surrounded plaintiff every time he left his unit, followed him, and threatened "to do something to get rid of me." Plaintiff notified the police about the threats. Wheatley did not respond to plaintiff's letters about Vartanian's harassment; rather, she directed Vartanian to respond. Plaintiff suffered emotional distress and humiliation, because the building management failed to address his complaints and spread lies about him.

In May 2012, defendant Wheatley brought an unlawful detainer (UD) action against plaintiff as a result of the April 28 altercation, based on Vartanian's and Galladian's reports to her that plaintiff instigated it, injuring Vartanian's hand and bruising his face. Wheatley saw that Vartanian's hand was bandaged. Plaintiff prevailed at trial. After the UD action ended, defendants stopped cashing rent checks from plaintiff and all other tenants, because there were problems with the bank and the bookkeeper was sick. Plaintiff's rent receipts were admitted into evidence. Plaintiff wrote numerous letters to defendant Wheatley about the uncashed checks, but never received a response. Plaintiff always pays his rent on time.

## PROCEDURAL HISTORY

Plaintiff filed suit against Wheatley, Vartanian and Galladian. He asserts five claims: (1) housing discrimination based on his national origin; (2) retaliation against him for opposing unlawful housing practices; (3) aiding and abetting in housing discrimination; (4) conspiracy to violate his civil rights; and (5) malicious prosecution. Plaintiff sought no economic damages, only compensatory damages for his emotional distress and punitive damages.

A jury trial was held in April 2014. The court directed a verdict for defendants on the causes of action for conspiracy and malicious prosecution, and on plaintiff's claim for punitive damages. The jury found in plaintiff's favor and against Wheatley for unlawful housing discrimination and for retaliation for reporting unlawful housing discrimination. It found that all defendants aided and abetted unlawful housing discrimination and retaliation. The jury awarded plaintiff $5,000.

4

Plaintiff moved for a new trial, arguing that the court committed legal error by directing a verdict on his claims for malicious prosecution and conspiracy. He also argued that the jury's award was inadequate. The court denied plaintiff's motion.

Plaintiff requested an award of $153,525 in attorney fees for 319.5 hours of legal work. The defense contended that plaintiff's request was excessive and unjustified, and that he should receive a reasonable amount based on his limited success. The trial court awarded plaintiff $10,000 in attorney fees, and entered judgment on May 14, 2014.

## DISCUSSION[2]

### 1. Directed Verdict

After the presentation of all evidence in a jury trial, a party may move for a directed verdict, which the trial court may grant as to some or all of the claims at issue; the final judgment must reflect the court's ruling on the directed verdict. (Code Civ. Proc., § 630, subds. (a)-(b).) The judgment in this case does not mention the court's ruling on the directed verdict. Nevertheless, we may consider the court's ruling on appeal. (*Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 384-385.)

"'A directed verdict may be granted when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party.'" (*Newing v. Cheatham* (1975) 15 Cal.3d 351, 358-359.) On appeal, we decide de novo whether plaintiff presented sufficient evidence to withstand a directed verdict. (*North Counties Engineering, Inc. v. State Farm General Ins. Co.* (2014) 224 Cal.App.4th 902, 920.)

#### a. *Malicious Prosecution*

In moving for a directed verdict on plaintiff's cause of action for malicious prosecution, the defense argued that Wheatley had probable cause to file the UD action

---

[2] Our discussion is limited to the issues argued in plaintiff's opening brief, ignoring new points unhelpfully raised in respondents' brief (such as the directed verdict on plaintiff's conspiracy claim), which plaintiff never thought to make on appeal.

against plaintiff in 2012, based on Vartanian's report of an assault and the visible injury to his hand. Plaintiff replied that he is less physically imposing than Vartanian, so no reasonable person would believe that plaintiff instigated the attack. Plaintiff conceded that he did not tell Wheatley his version of the altercation. Instead, he wrote to complain that his carpet needs cleaning and he felt harassed and intimidated by Vartanian. The court granted the defense a directed verdict on the malicious prosecution cause of action.

Malicious prosecution is a disfavored cause of action. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872 (*Sheldon*).) To prevail, a plaintiff must show that the prior action against him (1) was commenced by the defendant and terminated in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) There is no dispute that the first element was satisfied, because plaintiff prevailed in the UD action filed by Wheatley. The issue on appeal is the probable cause element.

"[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted." (*Sheldon*, *supra*, 47 Cal.3d at p. 878.)

The defendant's lack of success in the prior lawsuit, standing alone, does not show the absence of probable cause. (*Masterson v. Pig'n Whistle Corp.* (1958) 161 Cal.App.2d 323, 335.) "Whether the malicious prosecution defendant conducted a sufficient or adequate investigation is legally irrelevant to the probable cause determination." (*Ecker v. Raging Waters Group, Inc.* (2001) 87 Cal.App.4th 1320, 1331.) "[I]f the trial court concludes that, on the basis of the facts known to the defendant, the filing of the prior action was objectively reasonable, the court has necessarily determined that the malicious prosecution plaintiff was not subjected to an unjustified lawsuit." (*Sheldon*, *supra*, 47 Cal.3d at p. 883.)

The undisputed evidence at trial was that Wheatley instituted the UD action because she believed that plaintiff attacked Vartanian, an event to which Galladian's brother (an eyewitness) attested. Wheatley saw that Vartanian's hand was bandaged. Plaintiff wrote to Wheatley a few days after the event, but did not state in his letter that Vartanian instigated a physical assault. Though plaintiff argued at trial that he is smaller than Vartanian, Wheatley did not know plaintiff's size until she saw him for the first time at a deposition, when litigation was already underway.

The trial court properly decided the probable cause issue as a matter of law in favor of the defense. An objectively reasonable person in Wheatley's position could rely upon the report of her manager that plaintiff struck him, given Vartanian's visible injury, which he stated was a defensive wound. Wheatley was not required to conduct an investigation before deciding to pursue a UD action. Wheatley did not know that plaintiff claimed to be the victim, not the instigator, at the time she filed suit. Plaintiff mistakenly believes that the jury should resolve the probable cause issue. Not so. The question was: What did Wheatley know before she filed the UD action? Plaintiff failed to refute Wheatley's testimony that she knew, in May 2012, that plaintiff attacked Vartanian. The undisputed testimony presented a question of law for the trial court.

b. *Punitive Damages*

Plaintiff sought punitive damages based on defendants' oppression or malice. (Civ. Code, § 3294.) The trial court directed a verdict for defendants on this claim. Plaintiff presented no evidence of sufficient substantiality to support punitive damages.

Plaintiff's lawsuit was remarkably weak, as reflected in the jury's meager award. Plaintiff's statement of facts does not point to any evidence showing that defendants' actions had anything to do with plaintiff's national origin.[3] On page 34 of his opening

---

[3] It is unlawful for the owner of a housing accommodation to discriminate against or harass any person because of race, color, religion, sex, sexual orientation, marital status, national origin, ancestry, familial status, source of income, or disability. (Gov. Code, § 12955, subd. (a).)

brief, plaintiff purports to cite testimony showing that defendants violated his civil rights. Not one of the citations shows a hostility to plaintiff's national origin, only that Vartanian and Galladian acted unprofessionally and Wheatley was ineffectual or relied too much on her managers. At worst, it appears that defendants failed to carry out their duties to responsibly manage the apartment building. This does not give rise to punitive damages for a FEHA violation, as there is no showing that defendants had the requisite animus toward plaintiff's national origin. It appears that the jury awarded plaintiff a small amount of damages because defendants are subpar property managers, not because any of them care where plaintiff was born. Indeed, it is unrefuted that Wheatley first learned of plaintiff's country of origin when this lawsuit began.

## 2. **Amendment of the Pleading**

The plaintiff "may be allowed, on motion, to make a supplemental complaint . . . alleging facts material to the case occurring after the former complaint." (Code Civ. Proc., § 464, subd. (a).) Nowhere in the record on appeal is a motion to file a supplemental complaint to allege new material facts relating to continued nuisance activities by the upstairs neighbor, Dillion. By failing to request an amendment before trial, plaintiff led defendants to believe that the issues to be tried were the ones alleged in the complaint on file.

A lawsuit may be amended during trial to conform to proof, as plaintiff observes in his brief. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.) Plaintiff has not cited us to evidence of a written or oral motion presented to the trial court, requesting leave to amend his pleading during trial. Plaintiff cannot argue on appeal that the trial court erred by failing to grant a motion that plaintiff never made. The issue of amending the pleading was forfeited by plaintiff's failure to preserve it for appeal. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [in fairness to the trial judge and the adverse party, an appellate court does not consider defects or erroneous rulings when "'an objection could have been but was not presented to the lower court by some appropriate method'"].)

8

The trial court's refusal to allow an amendment will not be disturbed absent a manifest or gross abuse of discretion. (*Fogel v. Farmers Group, Inc.* (2008) 160 Cal.App.4th 1403, 1423-1424.) Abuse of discretion is unlikely if there is an unexplained delay or lack of diligence in seeking amendment. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.) Amendments should not be allowed "'when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend.'" (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.) If the plaintiff seeks to allege and prove new facts during trial, "'"prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses."'" (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1378.)

Plaintiff's lack of diligence in amending his pleading was unexplained. The trial court could presume prejudice to the defense by the addition of new and unpleaded facts. Plaintiff's unexplained delay in seeking to allege new material facts—along with the cumulative nature of this information—justified the trial court's refusal to admit additional evidence of Dillion's misbehavior after plaintiff filed suit. We note, in passing, that plaintiff was permitted to testify that Dillion's behavior persisted up to the time of trial.

### 3. **Attorney Fees Award**

In a FEHA action, the trial court "in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs." (Gov. Code, § 12965, subd. (b).) Ordinarily, courts apply a "lodestar" (the number of hours reasonably expended multiplied by the reasonable hourly rate), but that figure "may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

9

"'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court,'" which considers "'the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.'" (*PLCM Group*, *supra*, 22 Cal.4th at p. 1096.) The experienced trial judge is in the best position to assess the value of the professional services rendered in his court. (*Id.* at p. 1095.) As a result, the award will not be overturned unless it shocks the conscience or is not supported by the evidence. (*Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 549-550.)

The trial court explained its refusal to award plaintiff $153,525 in attorney fees. It wrote, "[t]he court, in this instance, is neither persuaded that Youssef's attorney had a reasonable basis to anticipate a FEHA damages award in excess of the amount recoverable in a limited civil case nor persuaded that Youssef's victory has advanced a significant issue or public purpose." Instead, "the court is persuaded that Youssef's claims essentially describe an ordinary landlord-tenant dispute."

The court acknowledged its discretion to reduce the lodestar. It limited plaintiff's attorney to time spent litigating the FEHA claims, and excluded the malicious prosecution claim. In calculating a reduced award, the court cited: plaintiff's use of a Judicial Council form complaint; his "'boilerplate'" discovery responses; the three-day trial with five witnesses and few exhibits; and "the undisputedly *de minimis* result obtained." The court concluded that the reasonable time spent multiplied by an hourly rate ordinarily charged in landlord-tenant disputes equals $10,000.

The attorney fees clause in FEHA is intended to provide "'fair compensation'" to attorneys who litigate claims in the public interest. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 584.) When a plaintiff brings an action under FEHA, and recovers an amount that could have been awarded in a limited civil case, the trial court has discretion to deny attorney fees entirely, if the plaintiff has "minimal success" and requests "grossly inflated" fees. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 976.)

10

The trial court was well within its discretion to award $10,000 in attorney fees, given plaintiff's minimal success at trial.  Plaintiff concededly suffered no economic damages.  He had no expenses associated with his emotional distress, such as medical or therapeutic bills.  By awarding $5,000, the jury recognized that only plaintiff's annoyance was at issue.  This should have been filed as a limited civil case because, as the trial court acknowledged, there was no likelihood of a large FEHA recovery.

Apart from overlitigating the case, plaintiff's attorney submitted billings that are exorbitant on their face.  He claimed six hours to prepare a complaint on Judicial Council forms, plus another three hours to prepare an amended complaint that is nearly identical to the original pleading.  He billed 14 hours *per day* for the first two days of trial, and 12 hours for the third day, even though court was in session for six hours each day.  He even managed to bill for the hours that the jury was in deliberations.  There is no explanation why plaintiff's counsel spent an additional six to eight hours per day working on the case outside the courtroom, given that he had already spent 73 hours on "trial prep."  The trial court could readily find that the claimed fees were grossly inflated, and could reduce them to the reasonable amount of $10,000.

## DISPOSITION

The judgment is affirmed.  Appellant's request for attorney fees on appeal is denied.  Respondents are entitled to recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

11