Filed 11/17/22  Carp Property v. Corona CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| CARP PROPERTY, LLC,<br><br>　　Plaintiff and Appellant,<br><br>v.<br><br>EFRAIN CORONA, Individually and as Trustee, etc.,<br><br>　　Defendant and Respondent. | 2d Civil No. B316354<br>(Super. Ct. No. 19CV04212)<br>(Santa Barbara County) |

Appellant Carp Property, LLC (Carp) bought a mixed-use property with a gym on the first floor and apartments on the second floor.  Two of the residential tenants soon moved out because the members of the gym made too much noise.  Carp accused the seller and brokers of concealing pre-sale noise complaints and sued them for over $2 million in compensatory damages plus punitive damages and attorney's fees.

Carp litigated the case for two years before concluding it would recover much less than expected.  It settled with some of the defendants for $90,000 and offered respondent Efrain Corona

(Corona) a walk-away settlement in exchange for a waiver of costs.  When Corona rejected this offer, Carp dismissed him without prejudice.  Corona later obtained attorney's fees of $200,000 as a prevailing party.  Carp appeals the award.  It contends, among other things, the figure so exceeds the amount in controversy as to violate public policy.

We affirm the judgment in full.

FACTUAL AND PROCEDURAL HISTORY

Corona is trustee of The Efrain Corona Family 2005 Revocable Trust (Trust).  The Trust owned a mixed-use building in Carpinteria that housed a gym on the first floor and four residential units on the second floor.  Carp agreed to buy the building from the Trust.  Radius, real estate brokers, represented both parties in the transaction.[1]  Escrow closed in August 2016.

Two of the building's four residential tenants moved out after Carp took title.  Carp accused Corona and Radius of concealing pre-sale complaints about noise levels at the gym as well as floor damage caused by gym members dropping weights during workouts.  It sought compensatory and punitive damages from all defendants, alleging it would have refrained from buying the building or offered less money had it known about these defects.  In addition, Carp sought attorney fees from Corona pursuant to a provision in their "Residential Income Property Purchase Agreement and Joint Escrow Instructions" (Agreement) stating:  "ATTORNEY FEES:  In any action, proceeding, or arbitration between Buyer and Seller arising out of this

---

[1] Different associate brokers within Radius represented the buyer and seller:  defendant Gene S. Deering (Carp Property) and defendant Paul J. Gamberdella (Trust).  Defendants William Cordero and Filippini Wealth Management, Inc. were also involved in the transaction.  None are parties to this appeal.

Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller . . . ."

Radius settled with Carp for $90,000. The trial court granted Radius's motion for determination of good faith settlement over Corona's opposition. (Code Civ. Proc., § 877.6.) Carp then served Corona with a statutory offer to settle the case in exchange for a waiver of costs and fees. (*Id.*, § 998.) Corona did not accept the offer.

Carp voluntarily dismissed Corona without prejudice three weeks before trial "to avoid further costs and expenses." Corona then moved for $228,000 in attorney's fees under Civil Code section 1717.[2] The trial court found Corona to be the prevailing party and awarded him $200,000.

DISCUSSION

*Standard of Review*

We review the order awarding Corona attorney's fees for abuse of discretion, reversing only if "the award shocks the conscience or is not supported by the evidence. [Citations.]" (*Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 549-550; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 (*Akins*) ["The only proper basis of reversal of the amount of an attorney fees award is if the amount

---

[2] Civil Code, section 1717, subdivision (a) states in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." All further statutory references are to the Civil Code.

3

awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination"].)

### *The Trial Court Did Not Abuse Its Discretion by Awarding Corona $200,000 in Attorney's Fees*

The court determined Corona to be the prevailing party because he achieved his litigation objectives, i.e., dismissal from the case. Carp challenges this finding. It cites its $90,000 settlement with Radius as showing it, not Corona, achieved its litigation objectives. (See *Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 452, italics omitted [plaintiff may achieve its litigation objectives when it "obtains a settlement from a party other than a defendant who has been voluntarily dismissed prior to trial and who is asserting entitlement to contractual attorney's fees"].) We do not agree.

A prevailing party analysis under section 1717 requires the trial court "to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.) Carp's $90,000 settlement with Radius contrasts starkly with the $2,120,000 it initially sought from defendants. In contrast, Corona obtained a voluntary dismissal from the case despite rejecting Carp's walk away offer. The trial court's determination that Corona prevailed under these circumstances was well within its discretion, and, more specifically, a product of the court's careful consideration of the parties' "pleadings, trial briefs, opening statements, and similar sources" of information.

Carp argues there can be no prevailing party under section 1717 where, as here, the defendant is dismissed without

4

prejudice. (See § 1717, subd. (b)(2) ["Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section"].) This is true when the dismissed claims are based solely on contract. Carp, however, brought claims in both tort and contract against Corona. The record supports the finding that these claims were "inextricably intertwined." (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 621 [section 1717(b)(2) does not "encompass tort and other noncontract claims arising from contracts containing broadly worded attorney fee provisions"]; *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 625-626 [court need not apportion fees award to prevailing party when contract claims were intertwined with tort claims].)

Carp next argues Corona could not seek attorney's fees as an individual because he signed the Agreement in his capacity as trustee of his family trust. We note Carp nevertheless sued Corona as an individual and sought attorney's fees against him individually under the Agreement. Holding Corona could not seek the same against Carp would contravene the purpose of section 1717: "to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas*, *supra*, 17 Cal.4th at p. 610.)

Carp attacks the reasonableness of the Corona's $200,000 attorney's fees award as well. It describes this amount as so disproportionate to the case's probable outcome as to violate public policy. (See *Harrington v. Payroll Entertainment Services, Inc.* (2008) 160 Cal.App.4th 589 [$46,000 fees request in a wage and hour dispute involving a $44.63 underpayment to plaintiff].) Carp proposes $90,000 as the benchmark value of its case because the trial court approved this figure as a good faith settlement of Carp's claims against the Radius defendants. We

5

are not persuaded.  Carp's modest but reasonable settlement with Radius bears no relationship to the amount Corona spent to defend what the trial court described as "an important case" in which "Carp was seeking substantial compensatory damages . . . as well as punitive damages and attorneys' fees."

Carp highlights how the invoices submitted by Corona's counsel in support of the motion contained block billed time entries and instances where high-level attorneys performed tasks better suited to lower-level attorneys.  The trial court noted these concerns and directed Corona's counsel to submit additional information about his invoices.  It eventually trimmed around $28,000 from Corona's request.  There is no basis to disturb this exercise of discretion considering its familiarity with this litigation and local billing practices.  (See *Serrano v. Priest* (1977) 20 Cal.3d 25, 49, quoting *Harrison v. Bloomfield Building Industries, Inc.* (6th Cir. 1970) 435 F.2d 1192, 1196 [an "'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'"].)

Carp lastly argues the trial court abused its discretion by awarding Corona the fees he incurred after rejecting Carp's "walk away" settlement offer, which totaled about $95,000 of the $228,000 he sought.  Accepting the offer, Carp reasons, would have achieved his dismissal without the time and expense of further litigation.  The trial court considered this information in its reasonableness analysis.  The $200,000 award neither "shocks the conscience" nor "suggests . . . passion and prejudice." (*Akins, supra*, 79 Cal.App.4th at p. 1134.)

CONCLUSION

The trial court's order awarding Corona attorney's fees is affirmed. Corona shall recover his costs on appeal.

NOT TO BE PUBLISHED.


CODY, J.*

We concur:


YEGAN, Acting P.J.


BALTODANO, J.

---

* Judge of the Ventura Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California constitution.

Thomas P. Anderle, Judge
Superior Court County of Santa Barbara

_____

Law Offices of James W. Bates, James W. Bates, for Plaintiff and Appellant.

McCarthy & Kroes, Patrick McCarthy and Briana E. McCarthy, for Defendant and Respondent.